## HARRIS v. TEXAS & PACIFIC RY. CO. et al.

### No. 10514.

United States Court of Appeals
Seventh Circuit.

April 10, 1952.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Anthony Scariano, Asst. U. S. Atty., all of Chicago, Ill. (Myles F. Gibbons, Paul M. Johnson and Charles F. McLaughlin, all of Chicago, Ill., Railroad Retirement Board, of counsel), for appellant.

Leonard Bosgraf, Kellam Foster, Chicago, Ill., Franklin Jones, Marshall, Tex. (C. A. Brian, Marshall, Tex., of counsel), for appellee.

Before MAJOR, Chief Judge, DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

William A. Harris was injured while employed as a switchman by the Texas and Pacific Railway Company. Upon application made to the Railroad Retirement Board (hereinafter called Board) Harris was awarded benefits based upon total and permanent disability. Thereafter he brought suit against the railway company under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., in the United States District Court for the Eastern District of Texas. In that action he caused a subpoena duces tecum to be issued by the United States District Court for the Northern District of Illinois, directed to Mrs. Mary B. Linkins, Secretary of the Board, requiring her to appear on September 14, 1951, at Chicago, Illinois, before Paul A. Ruhe, official court reporter, to testify and give evidence on behalf of Harris, and to produce certain documents in the possession of the Board acquired in connection with the claim of Harris for benefits under the Railroad Retirement Act, 45 U.S.C.A. § 228a et seq., which claim had theretofore been finally adjudicated. The principal document desired was a medical report made by Dr. Carl McCurdy of Texas, who had treated Harris after his injuries, and whom the defendant railway expected to call as one of their witnesses at the trial of the suit then pending in Texas. Pursuant to the subpoena Mrs. Linkins appeared before Mr. Ruhe having in her physical possession the documents referred to in the subpoena, but declined to furnish the reports of a medical nature which had been specified. She stated her declination was based upon Regulation 262.16(b) of the Board, 20 C.F.R., 1949 Ed., 262.16(b), and also on a specific order of the Board which directed that she decline to deliver said medical records.

On September 18, 1951, counsel for Harris filed a motion for an order compelling Mrs. Linkins to answer the interrogatories propounded to her on September 14, 1951, and a hearing was held thereon at which both Harris and Mrs. Linkins were represented by counsel. Judge Barnes entered an order to compel Mrs. Linkins to answer before Reporter Ruhe at 10:00 A. M. on September 19, 1951. Mrs. Linkins appeared before Mr. Ruhe at that time, and in response to the interrogatories propounded again stated she declined to attach to her deposition the medical reports described in the subpoena or copies thereof or to permit photographs of them, again basing her declination on the Board regulation as well as the specific order of the Board directing that she not disclose said information.

On September 20, 1951, counsel for Harris moved the court for a rule against Mrs. Linkins, to show cause why she should not be punished for contempt of court. The court issued the rule returnable September 24, 1951. The matter was continued to September 25, 1951, at which time counsel for Harris demanded that Mrs. Linkins be held in contempt of court for failure to make available the documents in response to the subpoena duces tecum. The district judge held Mrs. Linkins to be in contempt because she "would not permit the papers to be examined," and committed her to the custody of the Attorney General "until she shall obey said subpoena duces tecum issued out of this court, or is discharged by due process of law." Mrs. Linkins was released on her own recognizance in the sum of $1,000 and an appeal was taken to this court from the order adjudging her to be in contempt of court and committing her to the custody of the Attorney General.

On September 25, 1951, Harris was awarded a judgment against the railway company in the United States District Court for the Eastern District of Texas in the sum of $36,000, and on October 2, 1951, this judgment was paid in full and satisfied of record, and Harris gave a complete release to the railway company, which release was filed in the United States District Court in Texas.

■ The order of the district court sought only to coerce Mrs. Linkins to produce records in the custody of the Board so that Harris might have them, or copies thereof, available for possible use in the trial of suit against the railway company. The order was coercive in nature, and not punitive; it did not impose a fine or a definite sentence. It is clear that the contempt

90

involved in non-compliance with the order was civil contempt.

 The courts have consistently ruled that civil contempt proceedings are abated by a termination of the proceedings out of which they arose. United States v. United Mine Workers of America, 330 U.S. 258, 295, 67 S.Ct. 677, 91 L.Ed. 884; Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 451, 31 S.Ct. 492, 55 L.Ed. 797; United States v. International Union, D.C.Cir., 190 F.2d 865, 874; Parker v. United States, 1 Cir., 153 F.2d 66. In the latter case the court said, 153 F.2d at page 71: "Since the complainant in the main cause is the real party in interest with respect to a compensatory fine or other remedial order in a civil contempt proceeding, if for any reason complainant becomes disentitled to the further benefit of such order, the civil contempt proceeding must be terminated." Here the proceedings in which the subpoena duces tecum was issued in Illinois was ancillary to Harris' action against the railway company then pending in Texas, in which there has been a final adjudication and settlement.

 Plaintiff's attorneys argue that the question here at issue is not moot because future litigants might be refused access to inspect records in the custody of the Board. But jurisdiction of courts of the United States is limited to cases or controversies in law or in equity presenting justiciable issues, and such courts do not have power or jurisdiction to render purely advisory opinions for the guidance of litigants in future cases. Muskrat v. United States, 219 U.S. 346, 351–361, 31 S.Ct. 250, 55 L.Ed. 246; Johnson-Kennedy Radio Corp. v. Chicago Bears Football Club, 7 Cir., 97 F.2d 223, 226. Courts will not entertain an action or proceeding merely for the purpose of passing upon a novel question or an abstract proposition. Selected Products Corp. v. Humphreys, 7 Cir., 86 F.2d 821, 822.

 The order of the district court dated September 25, 1951, adjudging Mary B. Linkins in contempt and committing her to the custody of the Attorney General is vacated and set aside, and we direct the district court to quash the subpoena duces tecum herein dated September 7, 1951, and to dismiss the petition of plaintiff Harris therefor, without costs to either party. Alejandrino v. Quezon, 271 U.S. 528, 536, 46 S.Ct. 600, 70 L.Ed. 1071.

Remanded, with directions.